# Exhibit E

JUSTIN D. SANTAGATA, ESQ. (NJ ID 00082209/NY ID 484075)
COOPER LEVENSON
1125 Atlantic Avenue
Atlantic City, NJ 08052
P: 609-247-3121
E: jsantagata@cooperlevenson.com

| | |
|---|---|
| PARKE BANK,<br><br>                    Plaintiff,<br><br>v.<br><br>ERIGERE RAPIDUS SOLUTIONS INC., RICHARD EISLER, PATRICIA KRAUS A/K/A PATRICIA EISLER, RICH EISLER LLC, SHIV KRUPA CASH SERVICES LLC, BIREN PATEL, DISTURBED TRANSPORTATION LLC, SAM KEVORKIAN SR., KEWORKIAN AND SON, RJS PROPERTY MANAGEMENT LLC, RYAN SMITH, LAUREN SMITH, J-RICH CONCRETE AND EXCAVATING LLC, JOHN AND JANE DOES 1-10, ABC CORP 1-10, ROBERT CORMIER,<br><br>                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>GLOUCESTER COUNTY<br>GL-L-217-23<br><br>CIVIL ACTION<br><br>**FOURTH AMENDED COMPLAINT** |

Pursuant to R. 4:9-1, Plaintiff alleges as follows.

**PARTIES**

1.      Plaintiff Parke Bank ("**Parke** or **Parke Bank**") is a licensed banking institution located at 601 Delsea Drive in Sewell, New Jersey.

2.      Defendant Erigere Rapidus Solutions Inc. ("**ERS**") is a professional security services company with offices in Westville and Cherry Hill, New Jersey.

3.      Defendant Richard Eisler ("**Eisler**") is a former employee of ERS and resides in Camden County. Defendant Patricia Kraus, also known as Patricia Eisler, is his wife. Defendant Rich Eisler LLC is a Montana limited liability company apparently formed by Eisler in 2020.

## JURISDICTION/VENUE

4.      The New Jersey Superior Court, Gloucester County, Law Division, has jurisdiction and venue over this complaint because the relief sought by Parke is now primarily monetary and the acts and omissions underlying the complaint occurred in Gloucester County.

## FACTUAL BACKGROUND

5.      Parke is the depository institution for many legal cannabis dispensaries in South Jersey and Pennsylvania.

7.      In 2019, Parke contracted with ERS to provide "cash delivery services to the Federal Reserve and storage services when needed" And related consulting services. In practice, ERS did not pick up cash from cannabis dispensaries and drive it directly to the Federal Reserve Bank. Instead, ERS transported the cash to its facility in Westville, New Jersey, counted the cash (allegedly), stored it in a dedicated vault, and thereafter periodically deposited the cash into the account of Parke at the Federal Reserve Bank in Philadelphia.

8.      Each time ERS picked up cash from a cannabis dispensary it creates a "daily reconcile sheet" documenting the amount of cash obtained and for which ERS is responsible.

2

9.    Approximately once a week, ERS deposited such cash with the Federal Reserve Bank and Parke is provided with a deposit sheet.

10.    In 2022, Parke began to notice large discrepancies between the amounts of cash on the daily reconcile sheets and ERS's deposit sheets with the Federal Reserve Bank.

14.    In total and to date, there over $9,000,000 now missing.

20.    Parke has transitioned from ERS to a new professional security service for transfer of cash from cannabis dispensaries.

21.    On October 13, 2022, the Court granted an order to show cause with temporary relief to compel Parke access to the ERS facility in Westville to conduct an audit. ERS granted accessed on November 11, 2022.

22.    On October 18, 2022, Parke moved for a writ of replevin to repossess the cash it still believed was held at the ERS facility in Westville, which was entered on November 17, 2022.

23.    After ERS appeared in this litigation, it informed Parke that Parke's cash had been stolen by a former employee, Eisler. The Court subsequently granted Parke's writ of replevin, as amended to be directed at Eisler's properties in Camden County.

3

24.     As part of a consent order between the parties, ERS provided Parke with an investigative report detailing Eisler's alleged crimes ("**Report**") authored by its principal, Robert Cormier.[1]

25.     The Report sets forth the conclusions of ERS's investigation into and belief's concerning Eisler's use of the cash he stole from Parke and his attempts to launder the cash. It sets forth many assets through which Eisler laundered or attempted to launder the cash he stole from Parke and that Eisler is still believed to possess, including:

- Property at 1057 and 1059 Chews Landing Road, Laurel Springs, New Jersey 08021, valued at nearly $1,000,000 collectively

- Audi R8, Audi S8, Audi S7, Audi TT, Nissan GTR, Ford F-350 Platinum Dually, Dodge Dually, Yama Twin Outboard Boat, 5th Wheel Motor Home, Double Decker Enclosed Race Car Trailer, BMW S1000 Motorcycle, Suzuki GSXR 600 Motorcyle, Suzuki Hayabusa Motorcycle, Dodge Durango, Bobcat Excavator, Bobcat Skid Steer, Low Boy Trailer, valued collectively at approximately $1,000,000

- Engagement ring and diamond earrings, valued at $70,000

---

[1] Filed under seal pursuant to confidentiality order between ERS and Parke and appropriately redacted here.

4

- Firearms from an AR-15 to a Barret .50 caliber sniper rifle, valued at over $150,000

27. The Report sets forth multiple attempts by Eisler to exchange "banded currency" for checks written to him by third persons.

28. On December 23, 2022, Parke, through the Camden County Sheriff's Office, executed the writ of replevin and a prejudgment writ of attachment against Eisler at 1059 Chews Landing Road in Laurel Springs, New Jersey. During the execution, both Eisler and his wife, Kraus, were arrested for illegal firearms and an illegal cannabis growing operating in the basement at that address.

29. The Report includes a photograph of Eisler and Kraus in the ERS vault unauthorized on a Saturday night in October 2021 handling Parke's deposits in a manner that could not possibly have been part of ERS' operation.

30. Based on the report, and the results of the execution of the writs of replevin and prejudgment attachment, Eisler and Kraus appear to have used at least some of Parke's stolen money to fund an illegal cannabis growing/selling operation.

31. In order to hide the money stolen from Parke, Eisler and Kraus appear to have purchased many assets for other individuals (some of whom may not have known the source of the money) and entities. Eisler likely created other entities, not yet discovered, for this same purpose. For example, a Ford Heavy Truck is registered to "RJS Property Management" at 1059 Chews Landing Road in Laurel Springs; there is a boat on that property registered to Eisler's father-in-law (Kraus'

5

father); and there is a 2022 Kia Telluride registered at that property to "Lauren Smith."

## COUNT ONE: AGAINST ERS
### BREACH OF CONTRACT
### (COMMON LAW)

32.     Parke repeats and re-alleges the above allegations as if fully set forth in this count.

33.     ERS has breached its contract with Parke by, among other things, failing to safeguard the cash it was entrusted with and its failure or refusal to allow an audit of the ERS facility.

## COUNT TWO: AGAINST ERS
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (COMMON LAW)

34.     Parke repeats and re-alleges the above allegations as if fully set forth in this count.

35.     ERS has breached the covenant of good faith and fair dealing inherent in every contract in New Jersey by, among other things, failing to safeguard the cash it was entrusted with and its failure or refusal to allow for an audit of the ERS facility.

## COUNT THREE:  AGAINST ALL DEFENDANTS
### CONVERSION
### (COMMON LAW)

36.     Parke repeats and re-alleges the above allegations as if fully set forth in this count.

6

37.     Defendants have unlawfully converted Parke's property— the cash deposits from the cannabis dispensaries.

**COUNT FOUR: AGAINST EISLER, KRAUS, RICH EISLER LLC, SHIV KRUPA CASH SERVICES LLC, BIREN PATEL, DISTURBED TRANSPORTATION LLC, SAMUEL KEWORKIAN SR., KEWORKIAN & SON, RJS PROPERTY MANAGEMENT LLC, RYAN SMITH, LAUREN SMITH, J-RICH CONCRETE AND EXCAVATING LLC, ERS, JOHN DOE KRAUS FATHER, JOHN/JANE DOES, ABC CORPS. RACKETEERING/CONSPIRACY TO COMMIT RACKEETERING (N.J.S.A. 2C:41-4)**

38.     Parke repeats and re-alleges the above allegations as if fully set forth in this count.

39.     New Jersey's Racketeering and Corrupt Organizations Act ("**RICO**") provides triple damages and attorneys' fees for racketeering.

40.     RICO defines the predicate acts for racketeering activity that give rise to liability. They include: "theft and all crimes defined in chapter 20 of Title 2C of the New Jersey Statutes," "forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C of the New Jersey statutes," and wire fraud.

41.     Eisler, Kraus, Rich Eisler LLC, Shiv Krupa Cash Services LLC, Biren Patel, Disturbed Transportation LLC, Samuel Keworkian Sr., Keworkian and Son, RJS Property Management LLC, Ryan Smith, Lauren Smith, J-Rich Concrete and Excavating LLC, John Doe Kraus Father, John/Jane Does, and ABC Corp. ("**RICO Defendants**") were an enterprise under RICO engaged in racketeering when they conspired to steal Parke's money or to launder it.

7

42. The RICO Defendants committed more than two predicate acts of racketeering as part of the racketeering conspiracy to steal Parke's money.

43. These predicate acts include: (i) theft by unlawful taking or disposition, i.e. taking Parke's money; (ii) theft by deception, i.e. falsifying the "daily reconcile sheets" in order to hide the theft of Parke's money, as set forth in the Report; (iii) theft by extortion through attempted blackmail of Cormier, as set forth in the Report; (iv) receiving stolen property, i.e. Kraus' receipt and use of Parke's money for jewelry and vacations, among other expenditures; (v) theft by failure to make required disposition of property received, i.e. the skimming of Parke's money during the transfer of deposits from cannabis dispensaries to ERS, as set forth in the Report; (vi) money laundering in order to hide and conceal the theft of Parke's money and to fund further alleged criminal activity, such as the illegal cannabis growing/selling operation; (vii) computer criminal activity through improper alteration of the electronic records for the "daily reconcile sheets"; and (viii) falsifying or tempering with records through the same alteration.

44. Based on its post-complaint conduct, Shiv Krupa Cash Services LLC and its principal, Biren Patel, likely aided Eisler in laundering the money stolen from Parke. The Report alleges that Shiv Krupa Cash Services LLC received millions of dollars from Eisler. The money was then likely paid back to Eisler later on, i.e. washing it. After this complaint was filed, Shiv Krupa Cash Services LLC was served with a subpoena. It failed to appear on the subpoena. Parke then obtained an order compelling it to appear and Parke has been unable to serve it or

its principal/registered agent, Mr. Patel, suggesting evasion and guilty mind. Shiv Krupa Cash Services LLC has been fined previously by the State of New Jersey for commingling its bank account with client accounts, further establishing its susceptibility to money laundering. ABC Corp, as impleaded in this complaint, includes Shiv Krupa Cash Services LLC's parent company, which is being served with this complaint, to the extent possible, for notice purposes.

45.    Disturbed Transportation LLC is a Pennsylvania limited liability company owned or controlled by at least Kraus. Kraus used Disturbed Transportation LLC to launder Parke's stolen money by, among other things, purchasing assets through Disturbed Transportation LLC.

46.    Samuel Keworkian Sr. and his contracting business, Keworkian and Son, is named in the Report as having received "banded currency" from Eisler in exchange for checks to Eisler in the same amount, i.e. money laundering. It is not clear if Keworkian and Son is an incorporated company or just the name used by Mr. Keworkian for his contracting business.

47.    RJS Property Management LLC is a New Jersey limited liability company with a registered address of 1059 Chews Landing Road in Laurel Springs, New Jersey. Its principal is Ryan Smith. RJS Property Management LLC knowingly received assets purchased with Parke's money, including the Ford Heavy Truck referenced above.

48.    Lauren Smith knowingly received assets purchased with Parke's money, including the Kia Telluride referenced above.

49.     J-Rich Concrete and Excvating LLC is a Pennsylvania limited liability company owned by Eisler that Eisler used to launder Parke's money through purchase of assets/machinery.

50.     John Doe Kraus Father is the father of Kraus, for whom a boat was purchased in his name with Parke's stolen money.

51.     Eisler used ERS as a "person" under RICO to facilitate the predicate acts above.

52.     Parke is entitled to damages against the RICO Defendants in excess of $27,000,000.

## COUNT FIVE: AGAINST THE RICO DEFENDANTS
### FRAUDULENT TRANSFER
### (N.J.S.A. 25:2-25)

53.     Parke repeats and re-alleges the above allegations as if fully set forth in this count.

54.     The RICO Defendants made purchases with Parke's money, or received Parke's money, with the intent to hinder, delay, or defraud Parke in the eventual pursuit of that money. Eisler and Kraus appear to have made large purchases for other individuals, as set forth above. These "transferees" did not "t[ake] for value" and the purchases were intended to hide the source of the money for the purchase; therefore the purchases are void under New Jersey's Fraudulent Transfer Act.

10

<u>**COUNT SIX: AGAINST ERS**</u>
**NEGLIGENT HIRING/RETENTION/SUPERVISION**
**(COMMON LAW)**

55. Parke repeats and re-alleges the above allegations as if fully set forth in this count.

56. ERS had a duty to refrain from hiring or retaining an unfit employee, such as Eisler. There were many "red flags" in hiring and retaining Eisler, including his criminal background, his seedy lifestyle, and his propensity for anger and violence. These factors should have been even more alarming considering what Eisler was hired to do: transport large amounts of cash.

57. After he was hired by ERS, Eisler was given more and more authority and oversight of the ERS vault and related outgoing/incoming cash.

58. Parke was damaged by ERS' negligent hiring and retention of Eisler.

<u>**COUNT SEVEN: AGAINST ERS AND CORMIER**</u>
<u>**FRAUD/SPOLIATION/FRAUDULENT CONCEALMENT/PRIMA FACIE**</u>
<u>**TORT**</u>

59. Parke repeats and re-alleges the above allegations as if fully set forth in this count.

60. As part of its operations, ERS was required to provide daily "vault sheets" to Parke showing money in/out of the ERS vault.

61. On January 13, 2022, ERS provided a "vault sheet" showing $3,860,000 "in transit" to the Federal Reserve Bank. But that no money was received by the Federal Reserve Bank that day on account of Parke. Parke receives

11

daily credit sheets from the Federal Reserve Bank and money is credited the day it arrives. In an email the following day, Cormier said:

> I will have all the paperwork to you in the next 30 mins, the money you counted yesterday is going to be an additional deposit later this afternoon, the money on the sheet yesterday was already out for delivery before you arrived, I will find out what the issue on yesterday's was when I arrive around 11:00am. I believe we have packed up an additional 2 million of yesterday's money to bring us down below $3 million so we are empty compared to what we normally have. I will do my best to keep it at this level.

This contradicts the "in transit" representation from the prior day. Even if the same amount of money was credited to Parke Bank by the Federal Reserve Bank on January 14, 2022, it was already debited on the "vault sheet" on January 13, 2022. Cormier was effectivley debiting it twice. This "vault sheet" and subsequent email was falsification of a record with intent to deceive under N.J.S.A. 2C:21-4.

62.     The likely reason Cormier was debiting the money twice is because by this time he knew Eisler was involved in a massive theft of Parke Bank's money, Eisler had been fired, but Cormier had not yet informed Parke Bank. Cormier would not do so for another 6 months.

63.     On March 25, 2022, Parke Bank terminated the ERS contract, though the "handoff" would take many more months.

64.     In response on April 2, 2022, Cormier said that he had been absent from ERS in 2021 more than he intended and "I made some decisions giving staff responsibility in my absence and we have not yet delivered to my expectations…" Again, at this point, Cormier knew of Eisler's theft and said nothing.

65. ERS purportedly had multiple electronic surveillance measures at the ERS facility, in ERS armored vehicles, and to count/track money as it was picked up/dropped off. ERS and Cormier failed to preserve such electronic surveillance upon learning of Eisler's theft. It is clear that the surveillance was preservable because Cormier produced a screenshot of Eisler (and Kraus) in the ERS vault.

66. Sometime in the latter half of 2021, ERS had stopped confirming money counts when picked up and would often wait days to allegedly count it, contrary to the practices required by Parke Bank. On January 27, 2022, for example, a customer wrote to Parke and said:

> Hi LouAnn
>
> Attached is the second set of ppw requested, we are missing one cash pick-up for DC from last week that has not been deposited in Parke, I followed up with ERS to confirm status.
>
> I normally receive an auto confirmation from ERS electronically when the deposits are complete, but lately I've had to request copies and confirm status.
>
> Let me know if you need more information

ERS' failure to confirm money counts at pickup was unlawful and violated regulations and requirements of the Federal Deposit Insurance Corporation and the U.S. Department of Justice's Financial Crimes Enforcement Network. As such, these repeated failures violated N.J.S.A. 2C:21-15 because they were "unlawful and involv[ed] substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted whether or not the actor has derived a pecuniary benefit."

13

67. Assuming Cormier was not part of the conspiracy with the RICO Defendants set forth above, his actions after learning of Eisler's theft render him liable under RICO. By covering up and concealing Eisler's theft for over 6 months, he became part of the RICO enterprise. RICO, by its very nature, combines disparate acts of wrongdoers who may not be knowingly conspiring together.

68. ERS and Cormier are liable for fraudulent concealment and spoliation for the reasons set forth above.

69. If no other tort applies to the actions set forth above, ERS and Cormier are liable for prima facie tort.

70. The actions set forth above substantially inhibited Parke Banke's ability to recover the stolen money.

## DEMAND FOR RELIEF

Pursuant to counts one through seven of the complaint, Parke demands the following relief:

(a) A preliminary and permanent injunction allowing audits of the ERS facility on reasonable notice to ERS and transfer of Parke's property in possession of ERS or any of its agents, servants or employees to Parke

(b) A full accounting of the cash deposits received or held by ERS for Parke

(c) A writ of attachment against Eisler and Kraus

(d) The imposition of a constructive trust over all of Eisler's and Kraus' assets

14

(e)    Compensatory and punitive damages

(f)    Triple damages under RICO

(g)    Attachment of all fraudulently transferred assets

(h)    Attorneys' fees and costs

(i)    The fair market value of all fraudulently transferred assets or assets purchased with Parke's stolen money (direclty or indirectly)

(j)    Such other relief as the court deems equitable and just;

(k)    Damages against Cormier for all money that cannot be recovered due to his concealment of Eisler's theft.

Dated: February 21, 2024

_____
JUSTIN D. SANTAGATA, ESQ.

## R. 4:5-1 CERTIFICATION

Pursuant to R. 4:5-1, the undersigned member of the bar of this court states that the matter in controversy is not presently the subject of any other action pending in any other court or of any pending arbitration or administrative proceeding.

_____
JUSTIN D. SANTAGATA, ESQ.

## TRIAL COUNSEL DESIGNATION PURSUANT TO R. 4:25-1

Justin D. Santagata, Esq. is hereby designated as trial counsel.

15

_____
JUSTIN D. SANTAGATA, ESQ.

## **JURY DEMAND**

Plaintiff demands trial by jury on all counts so triable.

_____
JUSTIN D. SANTAGATA, ESQ.